# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL CASE NO. 3:17-CV-00374-MR

| | | |
|---|---|---|
| **BRANDY J. SANCHEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 14] and the Defendant's Motion for Summary Judgment [Doc. 16].

## I.   PROCEDURAL BACKGROUND

The Plaintiff, Brandy J. Sanchez ("Plaintiff"), asserts that her obesity, depression, schizoid/paranoid personality disorder, and borderline intellectual functioning constitute severe physical and mental impairments under the Social Security Act (the "Act") rendering her disabled.  On January 12, 2012, the Plaintiff filed an application for disability insurance benefits under Title II of the Act, alleging an onset date of January 31, 2007.

[Transcript ("T.") at 254]. The Plaintiff's application was denied initially and upon reconsideration. [T. at 146, 155]. Upon Plaintiff's request, a hearing was held on October 29, 2013, before an Administrative Law Judge ("ALJ"). [T. at 68]. Present at the hearing were the Plaintiff and her attorney. [Id.]. On January 21, 2014, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [Id. at 112-119]. On February 2, 2014, the Plaintiff requested that the Appeals Council review the ALJ's decision. [Id. at 196]. On January 30, 2015, the Appeals Council granted the Plaintiff's request for review, remanding the case to the ALJ for resolution of several issues. [T. at 123, 124-26]. On February 23, 2016, on remand, another hearing was held before the ALJ. [T. at 14]. Present at this hearing were the Plaintiff, her attorney, and a vocational expert ("VE"). [Id.]. On April 1, 2016, the ALJ issued a decision, wherein the ALJ again concluded that the Plaintiff was not disabled. [T. at 131-140]. On May 3, 2017, the Appeals Council denied the Plaintiff's request to review the ALJ's second decision, thereby making the ALJ's April 1, 2016 decision the final decision of the Commissioner. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence."  Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted).  "It consists of more than a mere scintilla of evidence but may be less than a preponderance."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ."  Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted).  Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's

decision.  Id. (internal quotation marks omitted).  To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."  Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III.    THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015).  "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps."  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted).  The burden is on the claimant to make the requisite showing at the first four steps.  Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity.  If so, the claimant's application is denied

regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her

past work, then the claimant is not disabled.  Id.  Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner.  At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy.  Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006).  "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."  20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635.  If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied.  Id.  Otherwise, the claimant is entitled to benefits.  In this case, the ALJ rendered a determination adverse to the Plaintiff at step five.

## IV.    THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the period from her alleged onset date, January 31, 2007 through her date last insured of June 30, 2011.  [T. at 133].  At step two, the ALJ found that the Plaintiff has severe impairments including obesity, depression, schizoid/paranoid personality disorder, and borderline intellectual functioning.  [Id.].  At step three, the ALJ determined that the

Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 134]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, has the RFC:

> [T]o perform light work as defined in 20 C.F.R. 404.1567(b) except: she is limited to simple, routine, repetitive, unskilled work, with only occasional contact with supervisors, coworkers, and the public.

[Id. at 136].

At step four, the ALJ identified Plaintiff's past relevant work as a fast food worker, a cleaner, a housekeeper, a fast food cook, a fast food shift manager, and a cashier. [Id. at 138]. The ALJ found that the Plaintiff, however, is "unable to perform any past relevant work," presumably because the work-related activities are precluded by the Plaintiff's residual functional capacity. [Id. at 139]. At step five, based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, including packer and folder. [Id. at 139]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from January 31, 2007, the alleged onset date, through June 30, 2011, the date last insured. [Id. at 140].

## V.  DISCUSSION[1]

In this appeal, the Plaintiff asserts three assignments of error.  First, Plaintiff argues that the ALJ erred in failing to provide a complete function-by-function analysis of Plaintiff's mental limitations in the RFC assessment as required by SSR 96-8p.  [Doc. 15 at 5].  Next, the Plaintiff contends that the ALJ failed to give good reasons for rejecting the opinions of Plaintiff's treating psychiatrist.  [Id.].  Finally, the Plaintiff argues the ALJ erred in relying on testimony of the VE that conflicts with the Dictionary of Occupational Titles ("DOT") without first obtaining an explanation.  [Id.].  The Plaintiff argues that these errors require remand.  The Defendant, on the other hand, asserts that the ALJ's determinations on these issues were supported by substantial evidence.  [See Doc. 17].  The Court takes Plaintiff's assignments of error in turn.

### A.  The RFC Assessment

Plaintiff argues the ALJ failed to provide a complete function-by-function assessment of the Plaintiff's work-related mental abilities in his RFC assessment as required by Social Security Ruling 96-8p.  Specifically,

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

Plaintiff contends the ALJ failed to account for Plaintiff's limitations in concentration, persistence or pace and social functioning.  [Doc. 15 at 6-13].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity.  The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2]  SSR 96-8p; see also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a plaintiff's claim is based on mental health impairments, the Social Security Rules and Regulations require a much more in-depth review and analysis of the plaintiff's past mental health history.  The Regulations make plain that "[p]articular problems are often involved in evaluating mental

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions."  20 C.F.R. § 416.945.

impairments in individuals who have long histories of … prolonged outpatient care with supportive therapy and medication."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.  The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC.  See SSR 96-8p; 20 C.F.R. §§ 404.1520a, 416.920a.  The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' of the adult mental disorders listings."  SSR 96-8p.  Paragraph B of the listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits her functioning.  These criteria represent the areas of mental functioning a person uses in the performance of gainful activity.[3]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.  The paragraph B criteria include restrictions in activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  Id.  The ALJ uses the special technique to

---

[3] Like paragraph B, the criteria described in paragraph C also "describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.  In this case, the ALJ found that the "evidence fails to establish the presence of the 'paragraph C' criteria."  [T. at 135].  Plaintiff does not assign error to this finding.  The Court, therefore, does not further address the paragraph C criteria in this opinion.

"evaluate the severity of mental impairments … when Part A of the Listing of Impairments is used."  20 C.F.R. § 404.1520a(a).

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)….  If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings[.]

20 C.F.R. § 404.1520a(b).

With regard to mental health issues, "[t]he determination of mental RFC is crucial to the evaluation of your capacity to do [substantial gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.  The RFC assessment is formulated in light of a claimant's physical and mental impairments.  Rule 96-8p provides:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and

summarized on the [Psychiatric Review Technique Form].

SSR 96-8p. Rule 96-8p further explains as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Id. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, in his first decision, the ALJ considered the paragraph B criteria and found that the Plaintiff has "mild to no restriction" in activities of daily living; "mild to moderate difficulties" in social functioning; and "moderate difficulties" in concentration, persistence or pace. [T. at 116 (emphases added)]. The ALJ found that the Plaintiff had the residual functional capacity "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to semi-skilled and unskilled work." [T. at 117]. On review of this decision, the Appeals Council found that the ALJ failed to include any limitation regarding social functioning in the RFC

assessment and that the limitations to "semi-skilled and unskilled work" were insufficient to account for the Plaintiff's difficulties in concentration, persistence or pace. [T. at 124]. The Appeals Council instructed the ALJ to address these deficiencies on remand and to evaluate the Plaintiff's mental impairments in accordance with the special technique. [Id.].

On remand, it appears the ALJ sought to account for the Plaintiff's "moderate difficulties" in social functioning by limiting the Plaintiff to "simple, routine, repetitive, unskilled work, with only occasional contact with supervisors, coworkers, and the public." [T. at 136]. The ALJ, however, fails to explain the basis for this restriction or how it accounts for Plaintiff's moderate limitations in social functioning. With respect to the Plaintiff's "moderate difficulties" in concentration, persistence or pace, rather than making any meaningful adjustment to the RFC assessment, the ALJ simply changed his determination on this limitation and instead found Plaintiff's difficulties to be "mild." [T. at 134]. The ALJ noted:

> At the prior hearing, the undersigned found that the claimant had moderate limitations in concentration, persistence, and pace, but yet no limitation or discussion of limitations with the ability to stay on task was included in the residual functional capacity. However, this point is moot in the current decision as the undersigned finds that the claimant actually has mild limitations with regard to concentration, persistence or pace.

[T. at 137-38]. In making this conclusion, the ALJ cites to and relies on the same evidence as he did in the first decision. [See T. 115-16; 134-35]. The ALJ, however, provides no explanation as to how the same evidence now supports a materially different conclusion. It is evident that the ALJ failed to conduct a complete function-by-function analysis of Plaintiff's mental health limitations and work-related abilities prior to expressing his RFC assessment in accordance with Rule 96-8p. The Court, however, is unable to conduct any actually meaningful review of this issue based on the record before it. A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citation omitted). See Patterson v. Comm'r, 846 F.3d 656, 662 (4th Cir. 2017) ("Without documentation of the

special technique, it is difficult to discern how the ALJ treated relevant and conflicting evidence.").

In sum, the Court concludes that the ALJ's treatment of Plaintiff's moderate mental health impairment in social functioning was inadequate to satisfy <u>Mascio</u>. Further, the Court is unable to review the ALJ's treatment of the Plaintiff's mental health impairment in concentration, persistence or pace. The Court cannot reconcile the ALJ's disparate findings on this impairment without any explanation in the decision. As such, the Court must remand the case on this ground.

On remand, the ALJ must comply with all of the requirements of Rule 96-8p in assessing the Plaintiff's RFC. The ALJ must carefully perform a function-by-function analysis of Plaintiff's mental limitations and work abilities, and thereafter "build an accurate and logical bridge from the evidence to his conclusion." <u>Monroe</u>, 826 F.3d at 189 (citation omitted). A narrative assessment describing how the evidence supports each conclusion, as required by SSR 96-8p, is essential and should account for Plaintiff's limitations in social functioning; activities of daily living; and concentration, persistence or pace and include an assessment of whether Plaintiff can perform work-related tasks for a full work day. <u>See</u> <u>Scruggs</u>, 2015 WL 2250890, at *5 (applying <u>Mascio</u> to find an ALJ must not only

provide an explanation of how a plaintiff's mental limitations affect her ability to perform work-related functions, but also her ability to perform them for a full workday).

### B. The Opinions of the Plaintiff's Treating Psychiatrist

Next, Plaintiff argues that the ALJ failed to state good reasons for rejecting the opinions of Plaintiff's treating psychiatrist, Dr. Devendra Shah. [Doc. 15 at 14-18].

In making disability determinations, the Regulations require ALJs to consider all medical opinions of record, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c); 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); SSR 06-03p (The ALJ must "consider all of the available evidence in the individual's case record in every case."). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

The ALJ must always give "good reasons" in his decision "for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on

the nature and severity of an individual's impairment(s)."  SSR 96-2p.

Furthermore, for treating source opinions:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, <u>supported by the evidence in the case record</u>, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

<u>Id.</u> (emphasis added).  Generally speaking, more weight will be given to an opinion of a medical source who has examined the claimant than to a non-examining source.  20 C.F.R. § 404.1527(c).  Further, more weight will generally be given to opinions from a claimant's treating sources than from sources rendering an opinion based upon a single or limited examination of a claimant.  <u>Id.</u>

Dr. Shah is a specialist in the field of psychiatry.  At the time of providing her opinions in this case, Dr. Shah had been treating the Plaintiff for well over three years.  [T. at 467-71, 494- 523].  On August 27, 2013, Dr. Shah provided a mental health medical source statement, opining that the Plaintiff's functional impairments include moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and "none-mild" restrictions of activities of daily living. [T. at 521].  Dr. Shah also opined that the Plaintiff will need two hours of

unscheduled breaks during each workday and that she will be off task 25% or more of the time. Dr. Shah further found that the Plaintiff is limited to low stress work and will be absent from work more than four days per month as a result of her mental health impairments. [Id.].

The ALJ assigned "little weight" to Dr. Shah's opinion "to the extent that it is inconsistent with the [RFC assessment]." [Id.]. Given that the RFC assessment is flawed as described above, any conclusion of the ALJ that relied on this RFC assessment cannot be supported by substantial evidence. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 662 & n. 1 (4th Cir. 2017) ("[B]ecause we cannot review the ALJ's mental-impairment evaluation, we cannot say that he properly assessed [plaintiff's] RFC. And because we cannot gauge the propriety of the ALJ's RFC assessment, we cannot say that substantial evidence supports the ALJ's denial of benefits."). In short, the ALJ's finding with respect to Dr. Shah's opinion lacks the "necessary predicate" for the Court to engage in meaningful review. Fox v. Colvin, 632 Fed.Appx. 750, 755 (4th Cir. 2015) (citing Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

Further, without explanation, the ALJ concluded that the functional limitations found by Dr. Shah were internally inconsistent with the other opinions in Dr. Shah's medical source statement. Based thereon the ALJ

found that "Dr. Shah's opinion is not fully supported by the objective medical evidence of record." Id. The ALJ, however, did not cite to any record evidence in support of this conclusion, as required by Ruling 96-2p. As such, the ALJ's conclusion regarding the weight of Dr. Shah's medical opinions was not supported by substantial evidence.

## C.    The VE Testimony

Finally, the Plaintiff argues that the ALJ improperly relied on the VE's determination that Plaintiff could work as a packer and a folder. Plaintiff contends that because these jobs require more than "occasional contact with supervisors, coworkers, and the public," the VE's testimony was inconsistent with the DOT.

Social Security Ruling 00-4p requires an ALJ to resolve any actual or apparent conflicts between the VE's testimony and the DOT before relying on such testimony to support a determination or decision about whether a claimant is disabled. Pearson v. Colvin, 810 F.3d 204, 207-8 (4th Cir. 2015) (citing SSR 00-4p). Here, the Plaintiff concedes that the "DOT descriptions for the jobs identified by the vocational witness do[ ] not address contact with others." [Doc. 15 at 20 (emphasis added)]. Because the DOT does not address contact with others in the first place, there can be no inconsistency between the ALJ's testimony regarding the Plaintiff's ability to perform

certain jobs and the social interaction required to perform them.  As there was no inconsistency to resolve, the ALJ did not err in accepting the VE's testimony that Plaintiff could perform the jobs despite her limitations.  As such, this assignment of error is without merit.

## VI.    CONCLUSION

For the reasons stated, remand is required.  On remand, the ALJ shall: (1) conduct a proper function-by-function analysis of the Plaintiff's residual functional capacity in compliance with the special technique as set forth above; and (2) properly weigh all medical opinions, including but not limited to the medical opinions of Plaintiff's treating psychiatrist, Dr. Devendra Shah, as more fully set forth in this opinion.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 14] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 16] is **DENIED**.  Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.  A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: August 14, 2018

Martin Reidinger
United States District Judge